Robert Mackey, Esq (SBN 125961)
**THE LAW OFFICES OF ROBERT MACKEY**
660 Baker Street
Suite A-201
Costa Mesa, CA 92626
Tel: (412) 370-9110
Email: bobmackeyesq@aol.com

Sara J. Watkins, Esq*
**ROBERT PEIRCE & ASSOCIATES, P.C.**
437 Grant Street, Suite 1100
Pittsburgh, PA 15219
Tel. (412) 281-7229
Email: swatkins@peircelaw.com

*Pro hac vice application forthcoming.

*Counsel for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ESTHER SCOTT,** ***on behalf of herself and all others similarly situated,*** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **GRUNS NUTRITION, INC.,** <br><br> **Defendant.** | **Case No:** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Esther Scott brings this action on behalf of herself and all others similarly situated, by and through their undersigned counsel, brings this action against Gruns Nutrition, Inc. ("Gruns" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her

counsel and based upon information and belief, except as to the allegations specifically pertaining to the Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. Plaintiff, on behalf of herself and all putative members of the "Class" (defined below), bring claims against Gruns as a class action for deceptive marketing practices of Defendant in its manufacture and sale of dietary supplement products labeled "Superfoods Greens Gummies" (hereinafter the "Product") and its false and deceptive advertisements claims about the purported nutritional benefits of taking the Product.

2. Plaintiff alleges violations of California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq*.), Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200-17210), and also brings claims for breach of express warranty, breach of implied warranty of merchantability, common law fraud, and unjust enrichment.

3. Defendant's representations regarding the efficacy and health benefits of the Product on its labels, webpages and other marketing and advertising media and materials is purposely deceptive to create a competitive advantage against compliant competitors. However, it is the consumers that ultimately suffer by this deviant and non-compliant behavior because Defendant knowingly provides non-factual information in an attempt to deceive and entice sales to consumers.

4. Plaintiff does not seek to impose requirements greater than those required by FDA regulations. Plaintiff's claims do not seek to expand upon, or call for stricter standards, than the labeling or marketing requirements established by FDA regulations.

**PARTIES**

5. Plaintiff Esther Scott is a citizen and resident of the State of California. In or around November of 2025, Plaintiff Scott was interested in becoming more health conscious and, influenced by Defendant's representations on its labeling and Instagram advertisements, decided to purchase two units of Defendant's Product from Sprouts Farmers Market in Studio City.

6. Prior to purchasing Defendant's Product, Plaintiff Scott reviewed the Product's labeling and relied on Defendant's representations that the Product was vegan, sugar-free, gluten-free, contained 6 grams of fiber, and contained antioxidants, as well as the claims made by Defendant in its advertisements and marketing that the Product was backed up with reliable and valid scientific research. Plaintiff Scott purchased Defendant's Product in reliance upon Defendant's representations.

7. At no point, either during Plaintiff Scott's research on the Product or at the point of sale, did Defendant disclose that the Product did not have the nutritional values that it advertised.

8. Defendant Gruns Nutrition, Inc. is a Delaware corporation with its principal place of business located at 9450 SW Gemini Drive, Beaverton, Oregon 97008.

## JURISDICTION AND VENUE

9. This action is properly before this Court, and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. Specifically, at least one member of the proposed class is a citizen of a different state from Defendant, the number of proposed Class members exceeds 100, and the aggregate amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs. See 28 U.S.C. § 1332(d)(2)(A).

10. This Court has jurisdiction over the Defendant because Defendant has sufficient minimum contacts within the state of California to establish Defendant's presence in the state of California, and certain material acts upon which this suit is based occurred within the state of California. Defendant does substantial business in the state of California and within this District and otherwise maintains requisite minimum contacts with the state of California. Specifically, Defendant distributed and sold the Product in the state of California.

11. Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction within the state of California and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, including that Plaintiff purchased and used the Product in the state of California and in this District. Additionally, Defendant distributes the Product in this District, receives substantial compensation

and profits from the sale and/or lease of Product in this District, and has and continues to conceal and make misrepresentations and material omissions in this District.

## FACTUAL ALLEGATIONS

12. Defendant is in the business of developing, manufacturing, packaging, promoting, advertising, and selling purported dietary supplement products under the brand name "Gruns." These dietary supplements include the individual product name "Superfoods Greens Gummies."

13. Defendant markets and sells the Product through its own website and through third-party retailers including Target, Amazon, TikTok Shop, and Sprouts.

14. Defendant packages and sells the Product in a large pouch or box, which contains individual Daily Packs of the Product. A Daily Pack contains eight Gummies, which constitute one serving size.

15. Defendant advises consumers to eat one Daily Pack of the Product each day in order to meet conventionally accepted nutritional needs.

16. Defendant promises to consumers that "every lot of our products undergoes *rigorous testing* to ensure quality and purity across label claims[.]"[1] (emphasis added).

17. Defendant doubles down on its "rigorous testing" promise by claiming that it regularly conducts third-party laboratory testing to validate that its Gummies meet label claims across vitamins and minerals.

18. This has led Defendant to disseminate extensive print, radio, television, and internet advertisements promoting the Product through a comprehensive advertising strategy that emphasizes the Product's nutritional benefits while positioning the Product as a convenient, time-saving alternative in light of the challenges associated with other efforts to meet nutritional recommendations, such as meal planning, shopping, preparation time, cost, and consistency.

---

[1] *Gruns Superfood Gummies*, GRUNS, https://gruns.co/products/gruns (last accessed June 30, 2026).

19. For example, Defendant prominently depicts through its packaging and advertisements that the Product provides "comprehensive daily nutrition,"[2] and will "transform your health by filling [the] nutrient gaps" in consumers' nutrition.[3]




20. The main way Defendant contends that the Product is able to support gut health and transform a consumers' health is by providing consumers with 6 grams of fiber.

21. For example, Defendant has disseminated the following advertisements:

---

[2] *Ads Transparency Center,* GOOGLE, https://adstransparency.google.com/advertiser/AR05001162672259989505/creative/CR14075284861866737665?region=US&start-date=2025-08-01&end-date=2025-12-31&format=TEXT (last accessed June 26, 2026)

[3] *Ads Transparency Center,* GOOGLE, https://adstransparency.google.com/advertiser/AR05001162672259989505/creative/CR11909001995983257601?region=US&start-date=2025-08-01&end-date=2025-12-31&format=TEXT (last accessed June 26, 2026).

gruns.co
www.gruns.co/

Best Fiber For Weight Loss - Grüns Daily: Save Up To 60%

Daily fiber supplement controls hunger naturally. 6g prebiotic gummies support appetite. Organic fiber supplement made...



**New Year's** · Up to 60% off Site-Wide

gruns.co
www.gruns.co/

Fiber Supplement That Works - Organic Fiber Supplement

Fiber gummies vs leading brands: 3x more fiber and better taste. No pills or powders! Skip basic fiber...







grüns
1 daily pack
9 cups of raw spinach
6g of fiber
6g of fiber
Same fiber.
Much easier.


You'll get 6g of fiber either way
Gut-supporting greens gummies with a strawberry taste
2 cups of broccoli


Grüns
Sponsored
Library ID: 992182083180739
You show up for your family, your work, your life.
But when things get busy, nutrition is usually the first thing to slip.
Your body still relies on fiber and essential nutrients to keep everything running.
Grüns delivers 60+ ingredients, 21 vitamins & minerals, and 6g of fiber—one simple habit that fits your routine.
SLEEPING AND EATING "FINE"
FILLING THE GAPS IN 10 SECONDS.
grüns
YOU'RE NOT TIRED.
YOU'RE RUNNING ON EMPTY.
GET UP TO 52% OFF


Grüns
Sponsored
Library ID: 1382315417072328
Did you know fiber isn't just for digestion? Fiber feeds the good bacteria in your gut, supporting regularity, digestive health, appetite control, and healthy blood sugar levels. Grüns gives you 6g of prebiotic fiber per serving—no powders, no prep.
Fiber is key for Weight Loss.
It supports satiety and healthy blood sugar levels – preventing the crashes that cause cravings, fatigue, and potentially overeating later.
GRUNS.CO
Get Your Daily Fiber Fix
Shop Now
GRUNS.CO

22. Defendant advertises and claims that one Daily Pack of the Product, contains 6 grams of Total Dietary Fiber as well as 16 milligrams of Niacin.




23. Both Dietary Fiber and Niacin (Vitamin B3) are Class I Nutrients.[4]

24. Therefore, the Product must be formulated so that the nutrient content, including Dietary Fiber and Niacin, is at least equal to the value for the nutrient declared on the label.

25. Despite advertising that the Product contains 6 grams of Total Dietary Fiber and 16 milligrams of Niacin per serving, independent testing has revealed that the Product contains 5.27 grams of Total Dietary Fiber and 14.6 milligrams of Niacin per serving.

26. As such, one serving of the Product contains only 88 percent of the Product's label claim for Dietary Fiber and only 75 percent of the Product's label claim for Niacin.

27. The promise by Defendant that the Product is "rigorous[ly] test[ed]" and that Defendant "regularly conducts third-party laboratory testing" magnifies the misrepresentations made by the Defendant.

---

[4] As defined in 21 CFR 101.9(g)(3)(i) and the compliance provisions explained in 21 CFR 101.9(g)4).

28. By only providing 88 percent and 75 percent of the claimed Dietary Fiber and Niacin, Defendant's Product fails to provide "comprehensive nutrition" and the nutritional equivalence to "fill the gaps" in consumers' nutrition; thus, rendering the above claims untrue and misleading.

29. Further, Defendant identifies that the Product contains a propriate "Core Nutrients Blend."

30. Specifically, the "Core Nutrients Blend" is declared within the Supplemental Facts Panel ("SFP"), while the individual components that make up the "Core Nutrients Blend" are identified outside the SFP.

31. Defendant's labeling of "Core Nutrients Blend" is inconsistent with FDA Labeling requirements governing the declaration of dietary ingredients and propriety blends.

32. Such inconsistencies result in consumer confusion regarding the composition and quantitative disclosure of the blend.

33. Thus, the Defendant's declaration of "Core Nutrients Blend" within the SPF has no scientific basis.

34. Without detailed delineation of "Core Nutrients Blend" supposed meaning, "Core Nutrients Blend" exists only to further deceive consumers that Defendant has somehow created a magic Product that will allow consumers to easily meet daily nutritional needs.

35. To add to consumer confusion regarding the make up the Product's dietary nutrient "Core Nutrients Blend," the Defendant fails to further identify which part of the plant the botanical dietary ingredient is derived from.

36. Specifically, Defendant claims that "Core Nutrients Blend" consists of "Organic Broccoli." Such a declaration is insufficient because it does not specify the part of broccoli utilized.

37. Defendant's failure to identify the specific plant parts utilized renders the botanical declarations of "Core Nutrients Blend" non-compliant with the requirements of 21 CFR § 101.4(h)(1).

## CLASS ACTION ALLEGATIONS

38. Under Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (c)(4), Plaintiff intends to seek certification of a Nationwide Class consisting of:

> **All individuals in the United States who purchased the Product within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.**

39. Plaintiff also intends to seek certification of a California Subclass, consisting of:

> **All persons residing in the State of California who purchased the Product within the statute of limitations.**

40. Plaintiff reserves the right to re-define the Nationwide Class and California Subclass if further information and discovery indicate that the definitions of the Class and Subclass should be narrowed, expanded, or otherwise modified.

41. Excluded from the Class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel for Plaintiffs in this action; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them and the spouses of such persons.

42. **NUMEROSITY**: The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown and such information is in the exclusive control of Defendant, Plaintiff believes that the Class encompasses thousands of individuals who are geographically dispersed throughout the nation; therefore, the number of persons who are members of the Class are so numerous that joinder of all members in one action is impracticable.

43. **COMMONALITY AND PREDOMINANCE**: There is a well-defined community of interest in the questions of law and fact affecting the Class members.

44. There are questions of law and fact common to all members of the Class: specifically, Plaintiff's claims arise from the same event or practice or course of conduct by the

Defendant giving rise to those claims of the putative Class, and Plaintiff's claims are based upon the same legal theories as those of the putative Class. The Defendant has engaged in a pattern and practice, in violation of the law, of misrepresenting the efficacy and nutritional and health benefits of the Product. The resolution of this issue—to wit, whether Defendant knowingly sold the Product with misleading information and did not inform Plaintiff and Class members—is a common question of fact and law that will affect all members of the Class in the same manner.

45. Other questions of law and fact common to the Class that predominate over questions that may affect individual members include:

a. The nature, scope, and operation of Defendant's wrongful practices;

b. The uniformity of the advertisements created through Defendant's marketing materials;

c. Whether Defendant misrepresented the efficacy and health benefits of the Product;

d. Whether Defendant engaged in fraudulent and/or deceptive practices as to the Class members;

e. Whether Defendant violated state consumer protection laws by misrepresenting the efficacy and health benefits of the Product;

f. Whether Defendant's conduct amounts to violations of the of the California Consumers Legal Remedies Act ("CLRA");

g. Whether Defendant's conduct amounts to violations of California's False Advertising Law;

h. Whether Defendant's conduct amounts to violations of California's Unfair Competition Law;

i. Whether Defendant's deliberately misrepresented and omitted material facts to Plaintiff and the Class members;

j. Whether members of the Class may be notified and warned about the contents of the Product and have the entry of final and injunctive relief compelling Defendant to stop its misrepresentations; and

k. Whether Plaintiff and the Class suffered damages because of Defendant's misconduct and if so, the proper measure of damages.

46. **TYPICALITY**: The claims and defenses of Plaintiff are representative of the Class members they seek to represent and typical of the claims of the Class because Plaintiff and Class members all purchased the Product. Plaintiff, like all Class members, purchased the Product when they were presented by Defendant, through its representations on the Product's label and through Defendant's marketing and advertising of the Product, that the Product contained 6 grams of Dietary Fiber and 16 milligrams of Niacin per serving.

47. **ADEQUENCY OF REPRESENTATIONS**: Plaintiff will fairly and adequately assert and protect the interests of the proposed Class because:

a. Plaintiff has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class;

b. Plaintiff has no conflict of interest that will interfere with the maintenance of this class action; and

c. Plaintiff has suffered consumer-related injuries and damages.

48. **SUPERIORITY**: class action provides a fair and efficient method for the adjudication of the instant controversy for the following reasons:

a. The common questions of law and fact set forth above predominate over questions affecting only individual Class members;

b. The proposed class is so numerous that joinder would prove impracticable. The proposed Class, however, is not so numerous as to create manageability problems; moreover, no unusual legal or factual issues render the Class unmanageable;

c. Prosecution of separate actions by individual members of the Class would risk inconsistent and varying adjudications against Defendant;

d. The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover for the damages done to them by Gruns; and

e. A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

## CAUSES OF ACTIONS

### COUNT I
**Breach of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, et seq.**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass)**

49. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

50. Plaintiff brings this claim on behalf of herself and on behalf of the Class.

51. Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of this Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Product as it relates to its nutritional content. Specifically, Defendant made false statements regarding the amount of Dietary Fiber and Niacin in the Product.

52. Defendant made representations and statements (by omission or commission) that led reasonable consumers to believe that the Product was fit for its intended purpose, to fill nutritional gaps in their daily diet. Defendant deceptively failed to inform Plaintiff and Class members that the Product had less than the amount of Dietary Fiber and Niacin represented by Defendant. Without providing consumers with accurate information regarding the nutritional content of the Product, it is impossible for them to know whether their nutritional needs are truly being met.

53. Defendant's false, misleading, and deceptive advertising and marketing practices to increase its profits was intended to induce reliance, and Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading, and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant through Defendant's false representations and omissions, they would have acted differently by, without limitation, refraining from purchasing the Product or paying less for it.

54. Defendant's acts and omissions are likely to deceive the general public.

55. Defendant engaged in these false, misleading, and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by §§ 17500, et seq., of the California Business and Professions Code.

56. The aforementioned practices also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors, as well as injury to the general public.

57. As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered injury in fact, and have lost money as a result of such false, deceptive, and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff and those similarly situated paid a premium for the Product, i.e., the difference between the price they paid for the Product and the price they would have paid but for Defendant's misrepresentations and omissions.

58. Plaintiff seeks, on behalf of herself and those similarly situated, restitution of the difference between what Defendant acquired from Plaintiff, the general public, and/or the Class, and what would have been acquired in absence of the false, misleading, and deceptive advertising and marketing practices complained of herein, which amount will be proven at trial, plus interest thereon.

59. Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the aforementioned practices constitute false, misleading, and deceptive advertising.

**COUNT II**
**Breach of the California Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750-1785**
**(On behalf of the California Subclass)**

60. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

61. Plaintiff brings this claim on behalf of herself and on behalf of the California Subclass.

62. Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c).

63. Plaintiff and the members of the Class are "consumers" as defined by Cal. Civ. Code § 1761(d).

64. The Product is a "good" as defined under Cal. Civ. Code § 1761(a).

65. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

66. Defendant engaged in unfair and/or deceptive acts in violation of the CLRA principally because it intentionally or negligently concealed and suppressed material facts concerning how the Product would improve overall energy, health and well-being, that it contained only 5.7 grams of Dietary Fiber per serving, and that it contained only 14.6 milligrams of Niacin per serving.

67. Defendant accomplished this by explicitly representing that the Product contained 6 grams of Dietary Fiber per serving and 16 milligrams of Niacin per serving and by failing to disclose accurate nutritional content in marketing and Product labeling. Defendant's conduct violated the CLRA, including but not limited to, the following provisions:

a. Defendant represented and continues to represent that the Product has characteristics, uses, or benefits that it does not have, in violation of § 1770(a)(5);

b. Defendant represented and continues to represent that the Product is of a particular standard, quality, or grade when, in fact, it is not, in violation of § 1770(a)(7);

c. Defendant advertised and continues to advertise its Product with the intent not to sell it as advertised, in violation of § 1770(a)(9); and

d. Defendant represented and continues to represent that its Product has been supplied in accordance with a previous representation when it has not, in violation of § 1770(a)(16).

68. Defendant's unfair and/or deceptive acts or practices repeatedly occurred in its trade or business and were capable of deceiving a substantial portion of the purchasing public.

69. Defendant knew, should have known, or was reckless in not knowing that the Product contained less Dietary Fiber and Niacin than Defendant claimed it did and, therefore, that the Product is not suitable for its intended use.

70. Defendant was under a duty to Plaintiff and the Class to disclose that the Product did not contain 6 grams of Dietary Fiber and 16 milligrams of Niacin because:

a. The facts that Defendant misrepresented to, and concealed from, Plaintiff and the Class are material because a reasonable consumer would have considered (and in fact did consider) them to be important in deciding whether to purchase the Product or pay a lesser price for it; and

b. The lack of Dietary Fiber and Niacin content in the Product poses serious fitness and health considerations for consumers and affects the central utility of the Product for its intended use.

71. In failing to disclose that the Product did not contain 6 grams of Dietary Fiber and 16 milligrams of Niacin, Defendant knowingly and intentionally concealed material facts in violation of its duty to disclose.

72. Plaintiff and the Class members have suffered injury in fact and actual damages resulting from Defendant's material misrepresentations and omissions, including purchasing a Product they otherwise would not have purchased, paying more for the Product than they otherwise would have paid, and being left with a Product of diminished value and utility because it did not contain 6 grams of Dietary Fiber and 16 milligrams of Niacin.

73. As a direct and proximate result of Defendant's unfair and deceptive conduct, therefore, Plaintiff and the Class members have been harmed and seek declaratory and injunctive relief, to be further determined at trial.

74. Pursuant to Cal. Civ. Code § 1780(a) and (e), Plaintiff and the Class further seek an order awarding (a) actual damages resulting from the purchase of the Product sold throughout the Class Period to all Class Members; (b) punitive damages; (c) restitution; and (d) attorneys' fees and costs.

75. Plaintiff provided statutory notice to Defendant of her claims pursuant to Cal. Civ. Code § 1782, which Defendant received on May 7, 2026.

**COUNT III**
**Breach of the California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 1720-17210**
**(On behalf of the California Subclass)**

76. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

77. Plaintiff brings this claim on behalf of herself and on behalf of the California Subclass.

78. The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

**Unfair Business Practices**

79. A business act or practice is unfair under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

80. Defendant's conduct, including, but not limited to, its false advertising scheme, is unfair because it violated California's public policy, including that which is legislatively declared in the CLRA, requiring a manufacturer to ensure that goods it places on the market are of a particular standard, quality, or grade. Defendant has failed to do this by placing the Product on the market even though it did not contain 6 grams of Dietary Fiber and 16 milligrams of Niacin despite the Product being advertised as such.

81. Defendant acted in an immoral, unethical, oppressive, and unscrupulous manner in at least the following respects:

a. Selling Plaintiff and the Class a Product that did not contain 6 grams of Dietary Fiber and 16 milligrams of Niacin despite the Product being advertised as such;

b. Failing to disclose that the Product did not contain 6 grams of Dietary Fiber and 16 milligrams of Niacin, despite the opportunity to do so in numerous locations that people in the market for such products would be likely to encounter;

c. Failing to acknowledge the scope and severity of the misrepresentation of the Product not containing 6 grams of Dietary Fiber and 16 milligrams of Niacin, which poses serious concerns for consumers in the market for products conducive gut health and nutrition supplement.

82. The harm to Plaintiff and Class members outweighs any rationale for Defendant's practices. There were alternative means of furthering Defendant's legitimate business interests other than deceiving its customers.

**Fraudulent Business Practices**

83. Defendant's conduct is fraudulent in violation of the UCL.

84. Defendant's false advertising scheme alleged herein constitutes a fraudulent business practice because Defendant made representations about the Product that were false and misleading.

85. Specifically, Defendant's fraudulent acts include knowingly and intentionally concealing from Plaintiff and the Class that the Product did not contain 6 grams of Dietary Fiber and 16 milligrams of Niacin while falsely marketing and misrepresenting the opposite.

86. Defendant's statements are likely to deceive, and did deceive, Plaintiff and Class members.

87. Defendant's misrepresentations and omissions alleged herein caused Plaintiff and the Class to purchase the Product or pay more than they would have had they known the true nutritional content of the Product.

88. Accordingly, Plaintiff and the Class have suffered injuries in fact, including loss of money used to purchase the Product as a result of Defendant's unlawful, unfair, and fraudulent acts. Absent these acts, Plaintiff and the Class would not have purchased the Product at all, or at least not at the prices they paid.

89. Plaintiff and the Class seek appropriate relief under the UCL, including such orders as may be necessary to: (a) enjoin Defendant from continuing its unlawful, unfair, and fraudulent

acts or practices and (b) restore Plaintiff and the Class any money Defendant acquired by its unfair competition, including restitution. Plaintiff also seeks reasonable attorneys' fees and expenses under applicable law.

**Unlawful Business Practices**

90. A business practice is unlawful under the UCL if it violates any other law or regulation.

91. Defendant engaged in unlawful business practices by violating California's False Advertising Law.

92. Defendant further engaged in unlawful business practices by violating the Consumer Legal Remedies Act, by falsely representing that the Product has characteristics and benefits that it does not have, is fit for its intended use, and is of a particular standard, quality, or grade.

93. Defendant's unlawful, unfair, and fraudulent business practices have unjustly enriched Defendant at the expense of Plaintiff and Class members.

## COUNT IV
**Breach of Express Warranty**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass)**

94. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

95. Plaintiff brings this claim on behalf of herself and on behalf of the Class.

96. Defendant is a "merchant" and a "seller" as those terms are defined under the Uniform Commercial Code (U.C.C.) and by the respective state statutes under which Plaintiff alternatively pleads this claim, inter alia, Cal. Com. Code §§ 2103(1)(d) and 2104(1).

97. Plaintiff and Class members are "buyers" of "goods" as defined under the U.C.C. and by the respective state statutes under which Plaintiff alternatively pleads this claim, inter alia, Cal. Com. Code §§ 2103(1)(a) and 2105(1).

98. "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." U.C.C. § 2-313(a)(1).[5]

99. Defendant created an express warranty within the meaning of the U.C.C. and the respective state statutes under which Plaintiff alternatively asserts this claim.

100. Defendant extended express warranties to consumers, including Plaintiff and the proposed Class, that the Product contains 6 grams of Dietary Fiber and 16 milligrams of Niacin. These promises and representations were extended by way of the product label, product descriptions and representations as to product qualities and characteristics, on its website (and third-party websites), and via advertisements, among other methods as detailed herein. These promises and representations became part of the basis of the bargain between the parties and thus constituted an express warranty.

101. Plaintiff and Class members reasonably and justifiably relied on Defendant's express warranty when purchasing the Product.

102. Defendant breached these warranties by selling the Product knowing its claims regarding the amounts of Dietary Fiber and Niacin were false.

103. As a direct result of this breach, Plaintiff and the Class did not in fact receive goods as warranted by Defendant.

104. As a proximate result of this breach of warranty by Defendant, Plaintiff and the Class have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial.

**COUNT V**
**Breach of Implied Warranty of Merchantability**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass)**

105. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

[5] The California statute adopting these provisions can be found at Cal. Com. Code § 2313.

106. Plaintiff brings this claim on behalf of herself and on behalf of the Class.

107. Defendant sold the Product to Class members under implied warranties of merchantability and fitness. Defendant impliedly warranted the Product to be merchantable and fit for the ordinary purposes for which it was intended to be used. Defendant is under a duty to design, manufacture, label, and test the Product to make it suitable for the ordinary purposes of its use—a dietary supplement that enables consumers to fill nutritional gaps.

108. Defendant breached its implied warranties for the Product by misrepresenting the amount of Dietary Fiber and Niacin in the Product.

109. In breach of Defendant's implied warranties, the Product is defective, unfit for the ordinary purposes for which it was intended to be used, and not merchantable.

110. Defendant is a "merchant" and a "seller" as those terms are defined under the Uniform Commercial Code (U.C.C.) and by the respective state statutes under which Plaintiff alternatively pleads this claim, inter alia, Cal. Com. Code §§ 2103(1)(d) and 2104(1).

111. Plaintiff and Class members are "buyers" of "goods" as defined under the U.C.C. and by the respective state statutes under which Plaintiff alternatively pleads this claim, inter alia, Cal. Com. Code §§ 2103(1)(a) and 2105(1).

112. A warranty that the Product was in merchantable condition and fit for the ordinary purpose for which such nutritional products are used is implied by law under the U.C.C. and relevant state law.

113. Defendant knew or should have known of the specific use for which the Product would be purchased and used. Plaintiff and the Class were promised a dietary supplement that contains 6 grams of Dietary Fiber and 16 milligrams of Niacin, but also that it would be adequately labeled, pass without objection in the trade, and be fit for the ordinary purposes for which dietary supplements are used.

114. Defendant knew that the Product would and did pass unchanged from the authorized manufacturers to Plaintiff and members of the Class, with no indication of the true Dietary Fiber and Niacin content of the Product.

115. Defendant provided Plaintiff and Class members with an implied warranty that the Product was merchantable and fit for the ordinary purposes for which it was sold.

116. This implied warranty included, among other things, a warranty that Defendant manufactured, supplied, distributed, and/or sold the Product with consumers in mind who would be seeking products to provide them with nutrition that they may not get from their daily diet.

117. Contrary to the applicable implied warranties, the Product at the time of sale and thereafter was not fit for its ordinary and intended purpose, in that it, in fact, contained less than the 6 grams of Dietary Fiber and 16 milligrams of Niacin that Defendant represented to consumers. Such action breached the implied warranty that the Product was of merchantable quality and fit for such use, in violation of the U.C.C. and relevant state law.

118. Defendant has been on notice of these issues and misrepresentations through, upon information and belief, its own internal research and development process. Defendant has had the opportunity to correct the amount of Dietary Fiber and Niacin in the Product or correct its misrepresentations but has chosen not to do so. When confronted with the allegations herein, Defendant elected to continue to sell its Product without disclosing its omissions.

119. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff and Class members did not receive the benefit of their bargains.

120. Plaintiff and Class members are entitled to damages and other legal and equitable relief, including the purchase price of the Product, overpayment, or loss of the benefit of the bargain.

**COUNT VI**
**Common Law Fraud**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass)**

121. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

122. Plaintiff brings this claim on behalf of herself and on behalf of the Class.

123. Defendant committed fraud by (i) failing to disclose and (ii) actively concealing, at the point of sale of the Product to Plaintiff and Class members and otherwise, that the Product contains less than the advertised amount of Dietary Fiber and Niacin. Through its own website, third-party websites, and other marketing materials, Defendant concealed the truth about the Product, intending for Plaintiff and the Class to rely upon Defendant's representations—which they did.

124. A reasonable consumer would not have expected the Product to contain any amount of Dietary Fiber and Niacin less than what was advertised by Defendant. Plaintiff and the Class did not know of the facts which were concealed from them by Defendant. Moreover, as consumers, Plaintiff and the Class did not, and could not, unravel the deception on their own. Defendant omitted information about the true Dietary Fiber and Niacin content on its website and marketing materials.

125. Defendant had a duty to disclose accurate Dietary Fiber and Niacin information because the true facts were known and/or accessible only to it and because it knew these facts were not known or reasonably discoverable by Plaintiff or members of the Class.

126. As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class have been harmed in that they purchased the Product when otherwise they would not have, paid more for the Product than they otherwise would have, and are left with a Product of diminished value and utility because of the defect. Meanwhile, Defendant has sold more of the Product than it otherwise could have and charged inflated prices for the Product, thereby unjustly enriching itself.

127. Based on the foregoing, Plaintiff is entitled to all remedies available, including refunds, actual damages, liquidated damages, punitive damages, attorney fees, and other reasonable costs.

128. Plaintiff and Class members request that the Court award equitable relief, including an order requiring Defendant to adequately disclose accurate nutritional content of the Product,

including of Dietary Fiber and Niacin, and an order enjoining Defendant from selling the Product without disclosing this information in the future.

129. Defendant's acts and omissions were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff and the Class; and to enrich itself. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**COUNT VII**
**Unjust Enrichment**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass)**

130. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

131. Plaintiff brings this claim on behalf of herself and on behalf of the Class.

132. This claim is asserted in the alternative to the extent that there is any determination that Plaintiff does not have standing to assert any contractual claims asserted against Defendant on the alleged basis of an absence of contractual privity or otherwise. By its wrongful acts and omissions described herein, including selling the Product with less than the amount of Dietary Fiber and Niacin advertised, Defendant was unjustly enriched at the expense of Plaintiff and the Class.

133. Plaintiff and the Class conferred a benefit upon Defendant by purchasing the Product at the full price. Under the circumstances, it would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained through its wrongful conduct in manufacturing, marketing, and selling the Product with the misrepresentation that the Product contains 6 grams of Dietary Fiber and 16 milligrams of Niacin, to Plaintiff and Class members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

a. For an order certifying the proposed Class and appointing Plaintiff and Plaintiff's counsel to represent the Class;

b. For an order awarding Plaintiff and Class members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

c. For an order awarding Plaintiff and Class members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

d. For an order or orders requiring Defendant to adequately disclose the amount of Dietary Fiber and Niacin of the Product and enjoining Defendant from misrepresenting that the Product contains 6 grams of Dietary Fiber and 16 milligrams of Niacin;

e. For an order awarding Plaintiff and Class members pre-judgment and post-judgment interest;

f. For an order awarding Plaintiff and Class members reasonable attorneys' fees and costs of suit, including expert witness fees; and

g. For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the members of the Class, hereby respectfully demands trial by jury of all issues triable by right.

DATED: July 20, 2026

Respectfully Submitted,

*/s/ Robert Mackey*
Robert Mackey, Esq. (SBN 125961)
**LAW OFFICES OF ROBERT MACKEY**
660 Baker Street
Suite A-201
Costa Mesa, CA 92626
Tel. (412) 370-9110
bobmackeyesq@aol.com

Sara J. Watkins, Esq.*
**ROBERT PEIRCE & ASSOCIATES, P.C.**
437 Grant Street, Suite 1100
Pittsburgh, PA 15219
Tel. (412) 281-7229
Email: swatkins@peircelaw.com

*Pro hac vice application forthcoming.

*Attorneys for Plaintiff and Putative Class*